IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>NESTOR ALONSO-VEGA<br><br>**Defendant** | **CRIMINAL NO. 20-371** (RAM) |

### MEMORANDUM AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Nestor Alonso-Vega's ("Defendant" or "Mr. Alonso-Vega") *Motion to Dismiss Counts One and Two Title 18 Section 666* ("*Motion to Dismiss*"). (Docket No. 61). Therein, Mr. Alonso-Vega challenges the indictment on three grounds: (1) the indictment fails to identify a specific federal program that receives qualifying federal benefits within the House of Representatives during the relevant time period; (2) Mr. Alonso-Vega was not an "agent" of the Commonwealth of Puerto Rico; and (3) the alleged fraudulently-inflated salary Mr. Alonso-Vega paid to his aide was "bona fide" and thus outside the scope of 18 U.S.C. § 666 ("Section 666"). For the following reasons, Defendant's *Motion to Dismiss* is **DENIED**.

## I. FACTS AND BACKGROUND

"When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true[.]" United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015). Therefore, the following factual recitation is taken from the indictment. (Docket No. 2).

Mr. Alonso-Vega is a former member of the Puerto Rico House of Representatives, having served as an at-large member from 2016 until 2020. Id. ¶¶ 4, 7. Person A worked in Mr. Alonso-Vega's legislative office between in or about February 2018 and in or about July 2020. Id. ¶ 11. Between April 2018 and October 2019, Person A's bi-weekly, net government salary was increased three times, as authorized by Mr. Alonso-Vega. Id. ¶ 12. According to the indictment, these salary increases were part of a scheme to fraudulently obtain money from the Commonwealth of Puerto Rico through federal funds theft, federal funds bribery, and kickbacks, whereby Defendant retained portions of Person A's inflated salary for his own use and benefit. Id. ¶¶ 18, 22.

On November 4, 2020, Mr. Alonso-Vega was indicted in this case. Id. At issue in his subsequent *Motion to Dismiss* are counts one and two of the indictment, *i.e.*, violations of 18 U.S.C. §§ 666(a)(1)(A) and 2 (Federal Funds Theft) and 18 U.S.C. §§ 666(a)(1)(B) and 2 (Federal Funds Bribery and Kickbacks). Importantly, the indictment states multiple times that the

Commonwealth of Puerto Rico received more than $10,000 in federal benefits during calendar years 2017, 2018, 2019, and 2020 and that Defendant was an agent of the Commonwealth of Puerto Rico during that time period. (Docket No. 2 ¶¶ 3, 16, 17, 18, 20, 21, 22).

## II.   APPLICABLE LAW

The Constitution of the United States requires that, "[i]n all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." U.S. Const. amend VI. To protect that right, the Federal Rules of Criminal Procedure state that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1).

Importantly, however, the government need not recite all of its evidence in the indictment. A sufficient indictment need only "sketch[] out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011). "Unlike a civil complaint that need allege facts that plausibly narrate a claim for relief, a criminal indictment need only apprise the defendant of the charged offense, so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Rodríguez-Rivera, 918 F.3d 32, 34 (1st Cir. 2019) (citations and internal quotation marks omitted).

Therefore, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) (citations omitted).

A defendant in a criminal case may move to dismiss an indictment for lack of jurisdiction at any time while the case is pending, or before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b). However, a Rule 12(b) motion "does not 'provide an occasion to force the government to defend the sufficiency of its evidence to be marshalled in support of proving the charged offense.'" United States v. Keleher, 505 F. Supp. 3d 41, 46 (D.P.R. 2020) (citing Rodríguez-Rivera, 918 F.3d at 35). "At the indictment stage, the government need not 'show,' but merely allege, the required elements." Id. (quoting United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)). The First Circuit has noted that "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations[.]" Guerrier, 669 F.3d at 4.

## III.   ANALYSIS

**A. The Indictment Adequately Identifies the Nature of the Charge**

Section 666 requires that the government ultimately prove that the party in question have a relationship with an entity "organization, government, or agency" that "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b). Defendant contends that the indictment fails to establish this jurisdictional hook because it does not identify with sufficient specificity the nature of the funds, the entity which received the federal benefits and the federal program which supplied the funds.

The procedural posture of this case is fatal to Defendant's arguments. As noted earlier, the Court must assume that the allegations in the indictment are true at this stage. Ngige, 780 F.3d at 502. Further, the Court cannot analyze the sufficiency of the indictment through the lens of the Government's burden **at trial**, as Defendant suggests. Instead, as explained above, the Court must determine whether the indictment merely "sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." Guerrier, 669 F.3d at 3. In his *Motion to Dismiss*, Defendant incorrectly posits the "prosecution has the burden of producing" and "the government must

prove beyond a reasonable doubt" the elements of the offense. (Docket No. 61 ¶¶ 7, 13). But that is not required by the analysis the Court must undertake at this stage. *See* United States v. Vega-Martínez, 949 F.3d 43, 48 (1st Cir. 2020) (citing Guerrier, 669 F.3d at 4-5) (finding that at the 12(b) stage, the court does not "evaluate the sufficiency of the evidence that the government might have to back up the indictment"). Instead, the sufficiency of the Government's evidence is a matter for trial. Id. at 49.

Here, the indictment alleges that in "each of the calendar years 2017, 2018, 2019 and 2020, the Commonwealth of Puerto Rico received more than $10,000 in federal benefits." (Docket No. 2 ¶ 3; *see also* id. ¶¶ 16, 20, 22). That sufficiently specifies the elements of the offense charged and apprises Defendant of the charges against him. *See* United States v. Del Valle-Colon, 2021 WL 5071907, at *2 (D.P.R. Nov. 1, 2021) (finding an indictment that stated that "in each of the calendar years . . . the Commonwealth of Puerto Rico received in excess of $10,000 from the United States government under federal programs" was sufficient to survive a 12(b) motion); *see also* Keleher, 505 F. Supp. 3d at 50-51 (holding that an indictment "sufficiently notifies the defendants of the elements and circumstances of the crimes with which they are charged . . . even though it does not identify the source or nature of federal benefits").

The Court also rejects Defendant's argument that the First Circuit's opinion in United States v. Bravo-Fernández (Bravo-Fernández III) requires the Government to reference a specific federal program in its indictment. (Docket No. 61 ¶ 18). The First Circuit in Bravo-Fernández III clearly articulated that it was only reviewing "[w]hether the government introduced evidence **at trial** to satisfy the jurisdictional element under 18 U.S.C. § 666(b) that the government entity involved received benefits in excess of $10,000 under a Federal program." 913 F.3d 244, 247 (1st Cir. 2019) (emphasis added and quotations omitted). In the case at bar, Defendant has not identified any authority suggesting that this indictment is deficient under the applicable 12(b) standards, but rather relies exclusively on caselaw discussing the Government's ultimate trial burden.

Simply put, "the government alleged in the indictment that the jurisdictional element is satisfied. We take this as true, and leave for trial whether the government can prove it." Del Valle-Colon, 2021 WL 5071907, at *3 (citing Guerrier, 669 F.3d at 3-4).

**B. The Indictment Sufficiently Alleges Agency**

Defendant next argues that he "is not properly an 'agent' of the government of the territory of Puerto Rico, rather he is an agent of the legislative body he was elected to[.]" (Docket No. 61 ¶ 15). Section 666 requires that the Government ultimately establish the individual involved in the federal funds theft or

bribe was an "agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof[.]" 18 U.S.C. §§ 666(a)(1), (a)(2). An "agent" is defined as "a person authorized to act on behalf of another person or a government and, in the case of a . . . government, includes a servant or employee, and a . . . representative[.]" Id. § (d)(1). "State" is defined to include "any commonwealth, territory, or possession of the United States[.]" Id. § (d)(4).

Despite Defendant's contention to the contrary, the First Circuit subscribes to "[t]he broadest definition" of "agent," encompassing "any person with authorization to act on behalf of the covered entity in some capacity, regardless of the person's official title." United States v. Pinson, 860 F.3d 152, 165 (4th Cir. 2017) (citing United States v. Sotomayor-Vazquez, 249 F.3d 1, 9 (1st Cir. 2001)); *see also* United States v. Carrasco-Castillo, 442 F. Supp. 3d 479, 486 (D.P.R. 2020) ("The First Circuit Court of Appeals has adopted a broad interpretation of section 666."). Thus, the Court is not required to interpret the statute as narrowly as Defendant claims.

Further, the First Circuit has rejected "any notion that state legislators are categorically exempt from prosecution under § 666." United States v. Fernández, 722 F.3d 1, 8 (1st Cir. 2013) (Bravo-Fernández I). The Bravo-Fernández I Court even determined that the Commonwealth of Puerto Rico is a state government, and

that its legislature is "part of the Commonwealth government." Id. at 9. It is unquestionable that "Congress clearly sought to apply § 666 to legislative-branch officials." United States v. Charbonier-Laureano, 2021 WL 4142403, at *4 (D.P.R. Sep. 10, 2021) (quoting United States v. Lipscomb, 299 F.3d 303, 333 (5th Cir. 2002)). While Bravo-Fernández I involved a member of the Puerto Rico Senate, and Mr. Alonso-Vega was a member of the House of Representatives, "there is nothing in the PR Constitution that suggests that the Senate represents the government while the House of Representatives does not." Id. at *7 (rejecting the argument that an at-large member of the Puerto Rico House of Representatives was not an "agent" for purposes of § 666). **As a former at-large member of the Puerto Rico House of Representatives, Mr. Alonso-Vega may be found an "agent" for purposes of Section 666.**

The indictment plainly alleges that "Alonso-Vega was at all relevant times an agent of the Commonwealth of Puerto Rico." (Docket No. 2 ¶ 17; see also id. ¶¶ 18, 21). In light of the well settled caselaw discussed above, this sufficiently tracks the statute's terms and gives Defendant adequate notice of the charges he must meet. See Stepanets, 879 F.3d at 372. There is no basis to dismiss the indictment on this ground.

### C. The "Bona Fide Salary" Safe Harbor Provision Does Not Apply

Finally, Defendant argues that the safe harbor provision, 18 U.S.C. § 666(c), shields his conduct from prosecution. (Docket No.

61 ¶ 16). Section 666(c) states that the statute "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). More specifically, Defendant posits that the statute was drafted to explicitly exclude salaries, and the Government here has alleged a scheme of fraud-via-*salary*-inflation. (Docket No. 61 ¶ 16). This argument fails for multiple reasons.

First, the indictment charges Defendant with "unlawfully inflating the government salary of Person A." (Docket No. 2 ¶ 18; *see also* id. ¶ 22). While the statute excludes **bona fide salaries**, "[a] bona-fide salary in the usual course of business is a 'salary actually earned in good faith for work done for the employer.' **A salary inflated through a fraudulent scheme, by contrast, is not earned in good faith**." Del Valle-Colon, 2021 WL 5071907, at *3 (emphasis added) (citing United States v. George, 841 F.3d 55, 62 (1st Cir. 2016); United States v. Berroa, 856 F.3d 141, 161 (1st Cir. 2017)). Any other conclusion would produce absurd results. If employee salaries uniformly qualified for Section 666's safe harbor provision, "a fraudster would only have to structure his loot as salary to evade prosecution." George, 841 F.3d at 62. That cannot be so. Therefore, because the indictment sufficiently alleges Defendant fraudulently inflated Person A's salary, the

Government has adequately alleged that Person A's salary was not bona fide.

Second, notwithstanding the above analysis, it is well established that "[w]hether wages are bona fide is ordinarily a question of fact for the jury." George, 841 F.3d at 62 (citing United States v. Cornier-Ortiz, 361 F.3d 29, 36 (1st Cir. 2004)). The Court sees no reason to diverge from that practice. It will be the jury's function to determine whether the "bona fide salary" safe harbor applies in this case when evaluating all the elements of the offense.

## IV.   CONCLUSION

For the reasons set forth herein, Defendant's *Motion to Dismiss* (Docket No. 61) is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of February 2022.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE